1
2
3
4
5
6
7
8          UNITED STATES DISTRICT COURT
9          CENTRAL DISTRICT OF CALIFORNIA
10                WESTERN DIVISION

| | |
|---|---|
| EMMA KHATCHATRIAN, | ) Case No. 2:17-cv-04961-JDE |
| Plaintiff, | ) |
| | ) MEMORANDUM OPINION AND |
| v. | ) ORDER |
| NANCY A. BERRYHILL, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

Plaintiff Emma Khatchatrian ("Plaintiff") filed a Complaint on July 6, 2017, seeking review of the Commissioner's denial of her application for disability insurance benefits ("DIB"). The parties thereafter filed consents to proceed before the undersigned Magistrate Judge. On June 6, 2018, the parties filed a Joint Stipulation ("Jt. Stip.") addressing their respective positions. The matter is now ready for decision.

## I.
## BACKGROUND

On July 20, 2014, Plaintiff submitted an application for DIB. Administrative Record ("AR") 20, 154-55. After her DIB application was

denied initially and upon reconsideration, Plaintiff requested an administrative hearing, which was held before an Administrative Law Judge ("ALJ") on January 15, 2016. AR 43-91. Plaintiff, represented by counsel, appeared and testified at the hearing, as did a vocational expert ("VE"). Id.

On February 18, 2016, the ALJ issued a written decision finding Plaintiff was not disabled. AR 20-29. The ALJ found that Plaintiff had not engaged in substantial gainful activity since September 20, 2013, the alleged onset date. AR 22. The ALJ determined that Plaintiff suffered from the following severe impairments: degenerative disc disease and degenerative joint disease of the bilateral shoulders. Id. The ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. AR 25. The ALJ also found that Plaintiff had the residual functional capacity ("RFC") to (AR 22):

> [L]ift and/or carry 10 pounds occasionally and less than 10 pounds frequently, sit six hours in an eight-hour workday, and stand and/or walk two hours in an eight-hour workday but for no more than 30 minutes per hour. [Plaintiff] can frequently reach overhead, handle, and finger with the right upper extremity and can frequently finger with the left upper extremity with 10 minutes of rest for every 50 minutes of keyboarding. [Plaintiff] can frequently climb ramps and stairs and balance, occasionally kneel, crouch, and crawl, and never climb ladders, ropes, or scaffolds. [Plaintiff] should never work around unprotected heights.

The ALJ determined that Plaintiff was able to perform her past relevant work as an assistant manager as generally performed in the national economy, relying upon the VE's testimony, and found past relevant work was not precluded by Plaintiff's RFC. AR 29. Accordingly, the ALJ concluded that Plaintiff was not under a "disability," as defined in the Social Security Act. Id.

Plaintiff's request for review by the Appeals Council was denied, making the ALJ's decision the Commissioner's final decision. AR 1-7.

## II.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court may review a decision to deny benefits. The ALJ's findings and decision should be upheld if they are free from legal error and supported by substantial evidence based on the record as a whole. Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015) (as amended). Substantial evidence means such evidence as a reasonable person might accept as adequate to support a conclusion. Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). It is more than a scintilla, but less than a preponderance. Id. To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998). "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. Id. at 720-21; see also Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) ("Even when the evidence is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record."). However, a court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007). Lastly, even when the ALJ commits legal error, the Court upholds the decision where that error is harmless. Molina, 674 F.3d at 1115. An error is harmless if it is "inconsequential to the ultimate nondisability determination," or if "the agency's path may reasonably be

3

discerned, even if the agency explains its decision with less than ideal clarity." Brown-Hunter, 806 F.3d at 492 (citation omitted).

### III.

### DISCUSSION

The parties present four disputed issues for the Court's consideration:

(1)   Whether the ALJ erred in relying on the non-treating Consultative Examiners ("CE") to the exclusion of the treating physician(s) and other medical providers and Agreed Medical Examiners ("AME");

(2)   Whether the ALJ relied on improper and erroneous reasons to support the adverse credibility finding, failed to consider evidence favorable to Plaintiff, and failed to consider the record as a whole;

(3)   Whether the ALJ failed to provide proper support for the decision to reject third party testimony; and

(4)   Whether the Plaintiff should be found disabled under the Grid Rules, at the sedentary level based on Rule 201.06, or at light work, based on Rule 202.06.

Jt. Stip. at 3.

**A. Consideration of Physicians' Opinions**

**1. Applicable Law**

In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record, including medical records, lay evidence, and "the effects of symptoms, including pain, that are reasonably attributable to the medical condition." Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006) (citation omitted).

Three types of physicians may offer opinions in Social Security cases: those who treated the plaintiff, those who examined but did not treat the plaintiff, and those who did neither. See 20 C.F.R. § 404.1527(c); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995) (as amended). A treating physician's

4

opinion is generally entitled to more weight than an examining physician's opinion, which is generally entitled to more weight than a nonexamining physician's. Lester, 81 F.3d at 830.

When a treating or examining physician's opinion is uncontroverted by another doctor, it may be rejected only for "clear and convincing reasons." See Carmickle v. Comm'r Soc. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008) (citing Lester, 81 F.3d at 830-31). Where such an opinion is contradicted, the ALJ must provide only "specific and legitimate reasons" for discounting it. Id.; see also Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014). Moreover, "[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); accord Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). The weight accorded to a physician's opinion depends on whether it is accompanied by adequate explanation, the nature and extent of the treatment relationship, and consistency with the record as a whole, among other things. 20 C.F.R. § 404.1527(c).

### 2. Analysis of Alleged Physical Impairments

Plaintiff contends that the ALJ erred by failing to support his decision to reject relevant exertional limitations offered by Plaintiff's treating and examining physicians. Jt. Stip. at 5. The Commissioner argues that the ALJ's assessed RFC was supported by the record and included more restrictive limitations than set forth in many of the physicians' opinions. Id. at 14.

### a. Dr. Caldron and Dr. Newton

Dr. Randall Caldron ("Dr. Caldron"), an orthopedic surgeon, served as Plaintiff's treating physician and treated Plaintiff beginning in 2012. See AR 487-591. Plaintiff visited Dr. Caldron every four or six weeks through the time of the administrative hearing in October 2016. AR 69. In February 2013, given

the issues with Plaintiff's spine and shoulders, Dr. Caldron provided the following opinion on Plaintiff's ability to work:

> With respect to the cervical spine, no lifting more than 10 pounds, no prolonged or repetitive twisting of the neck and no repetitive or prolonged overhead work. With respect to the shoulders, no lifting more than 10 pounds and no repetitive lifting to or above shoulder level. With respect to the thoracic and lumbar spine, no lifting more than 10 pounds, no prolonged walking or standing more than 30 minutes per hour, no working at unprotected heights, no [us]e of ladders and no repetitive bending, stooping, twisting, squatting or turning. No work over 6 hours per day.

AR 541.

Dr. Peter Newton ("Dr. Newton") served as an examining physician who evaluated Plaintiff over the course of two visits and reviewed Plaintiff's testing and medical records dating back to 2006. AR 281-331. Plaintiff visited with Dr. Newton for an Agreed Medical Evaluation for the purposes of determining Plaintiff's eligibility for workers' compensation. Dr. Newton's assessed limitations are largely similar to those assessed by Dr. Caldron, including: no prolonged or repetitive twisting of the neck; no repetitive or prolonged overheard work; no repetitive use of the right arm; no repetitive power gripping with the right upper extremity and no forceful and repetitive gripping, grasping, pushing, or pulling; no repetitive bending, stooping, twisting, squatting, or turning. AR 306. Dr. Newton also opined that Plaintiff "should work no more than 6 hours per day." AR 325.

In reviewing the medical evidence of record, the ALJ accorded Dr. Newton's opinion with "some weight" and noted his "assessment is somewhat vague in that he does not define or quantify the term 'no repetitive.'" AR 27. Nonetheless, the ALJ noted that the RFC required

6

resting of the upper extremities for 10 minutes every hour and limited standing and walking to only 30 minutes per hour, as well as posture and environmental restrictions. Id. The ALJ did not expressly reference Dr. Caldron in the decision, but did cite to some of Dr. Caldron's records.

Plaintiff argues the ALJ erred, among other reasons, in failing to acknowledge Dr. Caldron's "extensive treatment and opinions" (Jt. Stip. at 9), failing address Dr. Caldron's and Dr. Newton's 6-hour workday limitation, and failing to fully explain the apparent rejection of both doctors' neck-twisting limitation.

As an initial matter, the Commissioner argues because Dr. Caldron's and Dr. Newton's assessments are "very similar," and because the ALJ cited to some of Dr. Caldron's records, the Court should "reasonably infer" that the ALJ's analysis of Dr. Newton's assessment was intended to apply equally to Dr. Caldron. Although it would be preferable to have all relevant medical opinions and assessments referenced in an opinion, rather than requiring a reviewing Court to independently locate and compare the assessments of different doctors and thereafter "infer," as requested by the Commissioner, whether an analysis of a mentioned doctor also applies to the opinion of unmentioned doctors, in this case, the Court finds that even assuming the ALJ's analysis of Dr. Newton's disputed limitations applies equally to Dr. Caldron's, the analysis is insufficient.

As noted, in determining a claimant's RFC, an ALJ must consider all relevant evidence in the record. Robbins, 466 F.3d at 883. If an ALJ rejects a medical opinion, it is not necessary for the ALJ to repeat the magical incantation, "I reject [the physician's] opinion because . . .." Magallanes v. Bowen, 881 F.2d 747, 755 (9th Cir. 1989). Instead, a reviewing court may draw specific and legitimate inferences from

discussions of the evidence, particularity where conflicting evidence is detailed and interpreted, and findings are made, in order to assess why a statement or opinion has been rejected or accepted. Id.

Here, the Commissioner does not dispute that ALJ did not include in the RFC, nor take into account in his decision, Dr. Caldron's and Dr. Newton's assessed limitation against working no more than six hours per-day. Jt. Stip. at 16. Instead, the Commissioner argues the ALJ was not required to do so because the ultimate decision of whether a claimant can or cannot work is reserved to the ALJ. Jt. Stip. at 16. This misstates both the doctors' limitations and the ALJ's obligations during the sequential disability evaluation. First, the stated limitation was not a legal determination that Plaintiff was disabled; it was a limitation on the amount of time per day she could work. Second, in assessing RFC, the ALJ must consider all of the limitations imposed by the claimant's impairments that are supported by medical evidence. Carmickle, 533 F.3d at 1164. A medical opinion limiting a claimant to a six-hour workday must be considered by an ALJ. See Chavarin v. Colvin, 2017 WL 995208, at * 8 (N.D. Cal. Mar. 15, 2017). The ALJ was required to consider the limitation assessed by two physicians but did not do so. The failure to consider the limitation, and failure to make appropriate findings supported by either "clear and convincing" or "specific and legitimate reasons supported by substantial evidence" for rejecting the opinions at step four was error.

Similarly, although the ALJ referenced Dr. Newton's and Dr. Caldron's limitation against prolonged or repetitive neck twisting, other than stating that the limitation was vague, unquantified, and undefined, the ALJ did not accept the limitation or expressly reject the limitation, other than to note that the RFC requires resting the upper extremities for 10 minutes every hour and limits standing and walking to 30 minutes every hour and unspecified postural and environmental restrictions, without explaining how those restrictions related to

8

limitations against prolonged or repetitive twisting of the neck. See AR 27. Nor is it apparent to the Court how such limitations are translated from a limitation against prolonged or repetitive neck twisting.

The Court finds that the ALJ erred in failing to expressly accept, reject, or "translate" Dr. Newton's and Dr. Caldron's limitations against (1) more than a six-hour workday; and (2) "prolonged or repetitive twisting of the neck" in formulating Plaintiff's RFC.

### b. Dr. Khanaki

Dr. Salman Khanaki ("Dr. Khanaki"), a chiropractor, examined Plaintiff in December 2015 at the direction of Dr. Caldron. AR 69-70, 1519-24. Dr. Khanaki limited Plaintiff to a total of three hours of sitting or standing, and two hours of walking, out of an eight-hour workday. AR 1520. He opined that Plaintiff could lift and carry ten pounds occasionally and less than ten pounds frequently. AR 1519. Dr. Khanaki also found Plaintiff could occasionally reach overhead, frequently reach in all other directions, occasionally push and pull and continuously finger and feel. AR 1521. Dr. Khanaki concluded Plaintiff could never climb ladders or scaffolds, never crawl, occasionally climb ramps and stairs, stoop, kneel, crouch, and frequently balance. AR 1522.

The ALJ accorded Dr. Khanaki's assessment "limited weight, only to the extent that it is consistent with the longitudinal record and the [RFC]." AR 28. The ALJ stated that Dr. Khanaki's opinion "provided for some extreme limitations that are not supported by the medical evidence of record and examination findings of other physicians . . . ." Id.

Plaintiff argues that the ALJ erred in failing to explain sufficiently why he accorded "limited weight" to the opinion of Dr. Khanaki. Jt. Stip. at 9-10. The Commissioner responds that the ALJ appropriately found that Dr. Khanaki's opinion was not from a qualified medical source and appropriately rejected the opinion as inconsistent with the record as a whole. Id. at 17-18.

The ALJ did not err in evaluating Dr. Khanaki's opinion. Dr. Khanaki is not a licensed physician and is not an acceptable medical source; rather, as a chiropractor, he is an "other medical source." 20 C.F.R. § 404.1513(d)(1). "Other medical source" testimony "is competent evidence an ALJ must take into account," unless the ALJ "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001).

Here, the ALJ considered the opinion of Dr. Khanaki and provided a germane reason for discounting it: inconsistencies between Dr. Khanaki's assessed limitations and the examination findings of other physicians. AR 28. The ALJ did not provide a specific citation to the record to illustrate the inconsistency, but this was not error. Lewis, 236 F.3d at 512 (ALJs need not cite the specific record in discounting lay testimony so long as "arguably germane reasons" for dismissing the testimony are noted."). Further, the ALJ had recently recounted Plaintiff's medical history at length, (AR 26-27) and some of the physicians cited in the medical history offered opinions contrary to Dr. Khanaki's. For example, Dr. Khanaki found Plaintiff could only sit for three hours in a workday. AR 1520. However, Dr. Rostamloo, an examining physician, found Plaintiff had no restrictions in sitting. AR 27 (citing AR 595). This is sufficient evidence to discount Dr. Khanaki's testimony. See Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir. 1984) (an ALJ may discount lay testimony if it conflicts with the objective medical evidence). Accordingly, the ALJ did not err in his ascription of low weight to Dr. Khanaki's opinion.

### 3. Analysis of Alleged Mental Impairments

Plaintiff argues the ALJ failed to consider the limitations or recommended treatment from Dr. Thomas Fera ("Dr. Fera") and Dr. Arnold Gilberg ("Dr. Gilberg"), and erred in giving great weight to the opinion of Dr. Mary Bridges ("Dr. Bridges"). Jt. Stip. at 11-13. The Commissioner responds

10

the ALJ's reliance on Dr. Bridges' findings was proper and the ALJ's mental impairment evaluation was supported by substantial evidence. Id. at 18-21.

Dr. Gilberg examined Plaintiff and reviewed her medical records beginning in March of 2013 through June 2014. AR 1378-1450. He found that Plaintiff's concentration and attention were adequate to conduct the interview. AR 1401. Dr. Gilberg noted that Plaintiff appeared depressed, with symptoms of depressed mood, feelings of guilt, and fatigue. Id. The results of psychological testing yielded an above average score of depression due to pain. AR 1397. Dr. Gilberg concluded that Plaintiff was depressed and suffering psychiatric difficulties, and recommended Plaintiff see Dr. Fera on a weekly basis and stated Plaintiff might require medication. AR 1400. Dr. Gilberg gave Plaintiff a Global Assessment Functioning ("GAF") score of 56. AR 1398.

In August of 2014, Dr. Fera examined Plaintiff over the course of several hours and examined Plaintiff's medical records. Dr. Fera concluded that Plaintiff suffered from Chronic Pain Syndrome ("CPS"), psychosomatic illness, a sleep arousal disorder, and clinical depression. AR 483. Dr. Fera also found that Plaintiff suffered from growing introversion, low motivation, low libido as influenced by chronic pain, depression and low self-esteem, concentration to task deficit, and a difficulty in experiencing pleasure. Id. Dr. Fera found that this interfered with Plaintiff's social and occupational functioning. Id. Dr. Fera recommended lifetime psychological care. AR 484. Dr. Fera gave Plaintiff a GAF of 53. AR 483.

In October 2014, Dr. Bridges conducted a psychiatric evaluation of Plaintiff (AR 598-603), finding she had no difficulty maintaining composure, had an even temperament, and displayed no difficulties in maintaining social functioning and no difficulties focusing and maintaining attention. AR 602. Dr. Bridges found Plaintiff had no difficulties in concentration, persistence, or pace, and was psychologically capable of performing activities of daily living.

Id. Dr. Bridges ultimately concluded that Plaintiff would have no difficulties in being able to perform work activities on a consistent basis without special or additional supervision. AR 603. Further, she opined that Plaintiff would have no limitations completing a normal workday or workweek due to her mental condition. Id. Dr. Bridges gave Plaintiff a GAF of 72. AR 602. The ALJ accorded great weight to Dr. Bridges' opinion, finding it was "well-reasoned and supported by normal mental status examination findings." AR 25.

The ALJ did not err in his evaluation of Plaintiff's mental impairment. In his decision, the ALJ considered the opinions of Drs. Gilberg and Fera as the ALJ referred to these physicians' findings in evaluating Plaintiff's mental impairments. AR 24 (citing AR 480, 1383, 1388, 1395). Though Plaintiff posits that the ALJ only selected findings that illustrate positive aspects of Plaintiff's mental health, Plaintiff does not offer instances where either Dr. Gilberg or Fera assessed limitations greater than those assessed by Dr. Bridges. Although both Dr. Gilberg and Fera found Plaintiff to exhibit symptoms of depression and recommended treatments associated with those diagnoses, that alone is insufficient to demonstrate that Plaintiff suffered from a severe impairment. See Nottoli v. Astrue, 2011 WL 675290, at *3 (E.D. Cal. Feb. 16, 2011) ("a mere recitation of a medical diagnosis does not demonstrate how that condition impacts plaintiff's ability to engage in basic work activities.").

Plaintiff also contends that the ALJ failed to consider that Dr. Fera and Dr. Gilberg concluded that Plaintiff had a GAF score of 53 and 56, respectively.[1] Jt. Stip. at 13 (citing AR 476-85; 1393-1400). The Commissioner

---

[1] "A GAF score in the range of 51-60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or coworkers)." Cornelison v. Astrue, 2011 WL 6001698, at *4 n.6 (C.D. Cal. Nov. 30, 2011)(citing American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV"), at 34).

has declined to endorse GAF scores. See 65 Fed. Reg. 50746-01, 50764-65 (Aug. 21, 2000) ("The GAF scale . . . does not have a direct correlation to the severity requirements in [the Commissioner's] mental disorders listings."); see also Davis v. Colvin, 2015 WL 350283, at *7 (C.D. Cal. Jan. 26, 2015) ("An ALJ has no obligation to credit or even consider GAF scores in the disability determination."). The most recent edition of the DSM "dropped" the GAF score, citing its conceptual lack of clarity and questionable psychometrics in practice. Diagnostic & Statistical Manual of Mental Disorders (5th ed.); see also Tate v. Frauenheim, 2017 WL 6463716, at *6 (C.D. Cal. Nov. 16, 2017) ("GAF scores have been excluded from the latest edition of DSM because of concerns about their reliability and lack of clarity"), Report and Recommendation accepted by 2017 WL 6496419 (C.D. Cal. Dec. 15, 2017).

Nevertheless, the Social Security Administration "has said that GAF scores 'should be considered as medical opinion evidence under 20 C.F.R. §§ 404.1527(a)(2) and 416.927(a)(2) if they come from an acceptable medical source.'" Wellington v. Berryhill, 878 F.3d 867, 871 n.1 (9th Cir. 2017) (citation omitted).

Here, the ALJ considered Dr. Gilberg's and Dr. Fera's treatment notes in evaluating Plaintiff's mental impairments. AR 24 (citing AR 480, 1383, 1388, 1395) treatment notes, which included the GAF scores. Thus, the ALJ properly evaluated the medical evidence and did not err in failing expressly to discuss the GAF scores. See Chavez v. Astrue, 699 F. Supp. 2d 1125, 1135 (C.D. Cal. 2009) ("an ALJ is not required to give controlling weight to a treating physician's GAF score; indeed, an ALJ's failure to mention a GAF score does not render his assessment of a claimant's RFC deficient").

Opinions of examining physicians alone can constitute substantial evidence to support an ALJ's decision if they are based on the clinician's own independent examination of the claimant. See Tonapetyan, 242 F.3d at 1149.

Accordingly, the ALJ's reliance on Dr. Bridges' findings in evaluating the extent of Plaintiff's mental impairment was appropriate.

In sum, the ALJ's conclusion that Plaintiff's mental impairment was not severe was supported by substantial evidence in the record.

### 4. Harmless Error

Error in a social security determination is subject to harmless error analysis. Ludwig v. Astrue, 681 F.3d 1047, 1054 (9th Cir. 2012). Error is harmless if "it is inconsequential to the ultimate nondisability determination" or, despite the legal error, "the agency's path may reasonably be discerned." Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1099 (9th Cir. 2014); see also Molina, 674 F.3d at 1115 (an error is harmless so long as there remains substantial evidence supporting the ALJ's decision and the error "does not negate the validity of the ALJ's ultimate conclusion"). The Court finds that the ALJ's error in failing to consider the opinions of Dr. Caldron and Dr. Newton as set forth in Section III(A)(2)(a), above, was not harmless.

Dr. Newton and Dr. Caldron concluded Plaintiff could work no longer than six hours per day. AR 325, 541. During the hearing, the VE opined that "six hours of work in the national economy . . . would not be considered full-time employment." AR 89. Further, a six-hour limitation "would eliminate all" employment. AR 88. Thus, had the ALJ adopted the restriction assessed by Dr. Newton and Dr. Caldron with respect to Plaintiff's inability to work longer than six hours, it would have resulted in a finding of disability. As the Commissioner admitted, the ALJ failed to consider the conclusion that Plaintiff could not work longer than six hours in a day. Jt. Stip. at 16.

With respect to the limitation against prolonged or repetitive twisting of the neck, based upon the Court's review of the hearing transcript, although the VE was asked a variety of questions about "no repetitive" actions, it does not appear she was asked about whether a restriction of no prolonged or repetitive

twisting of the neck would have altered her opinion. As a result, the Court cannot find the failure to consider the restriction was inconsequential to the ultimate nondisability determination.

As a result, the Court concludes the errors in failing to properly consider and address the opinions of Drs. Caldron and Newton set forth above were not harmless and require remand.

**B. Plaintiff's Subjective Symptom Testimony**

**1. Applicable Law**

Where a disability claimant produces objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged, absent evidence of malingering, the ALJ must provide "'specific, clear and convincing reasons' for' rejecting the claimant's testimony regarding the severity of the claimant's symptoms." Treichler, 775 F.3d at 1102 (citation omitted); Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004); see also 20 C.F.R. § 404.1529(a). The ALJ's findings "must be sufficiently specific to allow a reviewing court to conclude that the [ALJ] rejected [the] claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." Moisa, 367 F.3d at 885 (alteration in original) (citation omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." Reddick, 157 F.3d at 722 (citation omitted). However, if the ALJ's assessment of the claimant's testimony is reasonable and is supported by substantial evidence, it is not the court's role to "second-guess" it. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

**2. Analysis**

In her function report Plaintiff stated "[t]he chronic pain of [her] back (the entire spine), neck, hips, shoulders" and her disturbed sleep "due to the pain and discomfort totally limit[ed] [her] ability to work." AR 212. She

claimed she could not sit in front of a computer for long periods of time and that after ten to fifteen minutes she would experience pain and discomfort, a tingling sensation in her spine, and radiating pain to her hips. Id. Plaintiff stated that the pain did not go away unless she laid down and curled up on her side. Id. She also described experiencing tingling in her spine if she stood longer than five or ten minutes. Id.

Plaintiff claimed that she began her day in the bathroom, trying not to sit too long as it agitated her bilateral hip pain; she made tea to calm her nausea due to painkillers, would engage in some light stretches, such as restorative yoga, and would "force [her]self to go for a walk to release the stiffness" of her hips and spine, after which she would take a quick shower. AR 213. She would then make a light breakfast and go for acupuncture; her husband would help her prepare quick lunches and dinners. Id. She explained she could make a sandwich or mix a prepackaged salad, heat up frozen food, stand long enough to cut vegetables or prepare a full meal. AR 214.

Plaintiff also claimed she had difficulty putting on her clothes if it involved raising her arms, was challenged getting in and out of the bathtub, and could only do light cleaning and dusting for fifteen to twenty minutes per day. AR 215. Plaintiff stated she watched television or could read for up to an hour, but would move due to pain when sitting. AR 216. She claimed that she could walk for up to a half mile before needing to stop and rest. AR 217.

During the hearing, Plaintiff testified that she could walk around the block for perhaps fifteen or twenty minutes, but no more than thirty minutes. AR 73-74. She also testified that she would wear bandage lenses to prevent her from opening her eyes while in the shower due to corneal abrasions. AR 72. Plaintiff testified she was able to do some stretches for about fifteen minutes; her husband did most of the grocery shopping, as she was afraid that if she went shopping she might experience back spasms necessitating immediate rest,

and she could only drive short distances because her spine was "not in a good shape to" handle long drives. AR 49, 72-73, 75-76.

Plaintiff testified that her physicians recommended surgery for her shoulders, but she decided against it owing to allergic reactions and stomach issues that result from taking the medications associated with the procedure. See AR 61-62. She testified her tinnitus caused a "huge ringing" in her left ear, especially at night, caused by temporomandibular disorder ("TMJ"). AR 71

The ALJ determined Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." AR 26. The ALJ offered four reasons for discounting Plaintiff's subjective symptom testimony: Plaintiff's activities of daily living, non-compliance with medical treatment, malingering, and a lack of objective medical evidence. AR 26-27.

Although the ALJ outlined four distinct reasons in discounting Plaintiff's subjective symptom testimony, because: (i) such findings are reviewed in light of the record as a whole (see Struck v. Astrue, 247 F. App'x 84, 86-87 (9th Cir. 2007); (ii) one of the bases for the ALJ's decision to discount Plaintiff's symptom testimony was a lack of objective medical evidence; and (iii) the Court has found the ALJ erred in assessing some of the medical evidence, the Court finds that the ALJ's decision to discount Plaintiff's subjective symptom testimony must also be remanded for further proceedings consistent with this Order.  Such further proceedings shall be guided by the Ninth Circuit's "repeated[] warn[ings] that ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely

resting in bed all day." <u>Garrison v. Colvin</u>, 759 F.3d 995, 1016 (9th Cir. 2014); <u>Vertigan v. Halter</u>, 260 F.3d 1044, 1050 (9th Cir. 2001) ("This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability."). "[O]nly if [her] level of activity [was] inconsistent with [a claimant's] claimed limitations would these activities have any bearing on [her] credibility." <u>Garrison</u>, 759 F.3d at 1016. Here, the ALJ discussed briefly a single daily activity, and failed to make any finding as to the transferability of that or any other activity to the workplace. AR 42; <u>See</u> <u>Martinez v. Berryhill</u>, 721 F. App'x 597, 600 (9th Cir. 2017) (ALJ improperly "discounted [claimant]'s testimony based on her daily activities . . . [without] support[ing] the conclusions as to the frequency of those activities or their transferability to the workplace."); <u>Orn</u>, 495 F.3d at 630 (ALJ must make "specific findings related to [the daily] activities and their transferability to conclude that a claimant's daily activities warrant an adverse credibility determination").

## C. Third Party Testimony

### 1. Applicable Law

"In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." <u>Bruce v. Astrue</u>, 557 F.3d 1113, 1115 (9th Cir. 2009) (quoting <u>Stout v. Comm'r, Soc. Sec. Admin.</u>, 454 F.3d 1050, 1053 (9th Cir. 2006)); <u>see also</u> 20 C.F.R. § 416.913(d) (statements from spouses, parents, other relatives, and friends can be used to show severity of impairments and effect on ability to work). Such testimony is competent evidence and "cannot be disregarded without comment." <u>Bruce</u>, 557 F.3d at 1115 (quoting <u>Nguyen v. Chater</u>, 100 F.3d 1462, 1467 (9th Cir. 1996)); <u>Robbins</u>, 466 F.3d at 885 ("[T]he ALJ is required to account for all lay witness testimony in the discussion of his or her

findings."). When rejecting the testimony of a lay witness, an ALJ must give specific reasons germane for discounting the testimony. <u>Valentine v. Comm'r, Soc. Sec. Admin</u>, 574 F.3d 685, 694 (9th Cir. 2009).

### 2. Analysis

Mr. Robert Nisanian ("Mr. Nisanian"), Plaintiff's husband, submitted a third party adult function report on August 18, 2014. AR 203-11. Mr. Nisanian noted Plaintiff's chronic pain of the back, spine, neck, shoulders, and hips. AR 203. He recounted that, depending on how she felt, Plaintiff's day consisted of self-care, "light exercise/walking", some cooking, and therapy. AR 204. He stated that she needed help with laundry, ironing, cleaning, and cooking. AR 205. Once a week, with Mr. Nisanian's help, Plaintiff went grocery shopping or shopping for household items. AR 206.

The ALJ discounted Mr. Nisanian's observations of Plaintiff's symptoms and daily activities for two reasons: (1) Mr. Nisanian's statements were inconsistent with the objective medical evidence; and (2) Mr. Nisanian's statements essentially mirrored Plaintiff's function report. AR 28. Plaintiff contends that the ALJ failed to provide proper support for rejecting Mr. Nisanian's report. Jt. Stip. at 32-33. The Commissioner argues that the ALJ's reasoning was sufficient to reject Mr. Nisanian's report. <u>Id.</u> at 33-35.

As the Court has found the ALJ erred in assessing the medical evidence, which forms part of the basis for the ALJ's decision to reject Mr. Nisanian's report, the ALJ's ruling on this issue shall also be subject to further proceedings on an open record upon remand.

### D. Applicability of the Grids

### 1. Applicable Law

A claimant makes a prima facie showing of disability where she has established that she suffers from a severe impairment that prevents her from doing past work. <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1100 (9th Cir. 1999). Once

the claimant makes such a showing, the Commissioner bears the burden of "show[ing] that the claimant can perform some other work that exists in 'significant numbers' in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience." Id. (citation omitted). The Commissioner can meet this burden in one of two ways: "(a) by the testimony of a VE, or (b) by reference to the Medical-Vocational Guidelines ['the Grids'] . . . ." Id. at 1101 (emphasis omitted).

The Grids are matrices of "four factors identified by Congress—physical ability, age, education, and work experience—and set forth rules that identify whether jobs requiring specific combinations of these factors exist in significant numbers in the national economy." Heckler v. Campbell, 461 U.S. 458, 461-62 (1983). For purposes of applying the Grids, there are three age categories: younger person (under age 50), person closely approaching advanced age (age 50-54), and person of advanced age (age 55 or older). 20 C.F.R. § 404.1563(c)-(e).

## 2. Analysis

At step four of the sequential disability evaluation, the ALJ concluded that Plaintiff had not met her burden to demonstrate that she suffered from severe impairments that kept her from performing her past work. AR 29. The ALJ made no alternative findings at step five on other occupations that someone with Plaintiff's RFC could perform.

Plaintiff argues that she should be found disabled under the Grids. Jt. Stip. at 35-38. The Commissioner responds that the application of the Grids is inappropriate, as the ALJ found Plaintiff was capable of performing her past relevant work as generally performed. Id. at 38-39.

The application of the Grids is only appropriate at step five of the sequential evaluation. See Lounsburry v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006) ("The grids are applied at the fifth step of the analysis under 20

C.F.R. § 404.1520 . . . .”). As the ALJ did not reach step five, it is premature for the Court to make a determination involving application of the Grids. Terranova v. Colvin, 2016 WL 4487719, at *5 (W.D. Wash. Aug. 5, 2016), Report and Recommendation adopted by 2016 WL 44799844 (W.D. Wash. Aug. 25, 2016).

**E. Remand for Further Proceedings**

The decision whether to remand for further proceedings is within this Court's discretion. Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th Cir. 2000) (as amended). Where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. See Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004); Harman, 211 F.3d at 1179 (noting, “the decision of whether to remand for further proceedings turns upon the likely utility of such proceedings”). A remand for further proceedings is appropriate where outstanding issues must be resolved before a determination of disability can be made and it is not clear from the record that the ALJ would be required to find the claimant disabled and award disability benefits. See Bunnell v. Barnhart, 336 F.3d 1112, 1115-16 (9th Cir. 2003).

Because it is unclear, in light of the interrelated issues, whether Plaintiff is in fact disabled, remand here is on an “open record.” See Brown-Hunter, 806 F.3d at 495. The parties may freely take up all issues raised in the Joint Stipulation, and any other issues relevant to resolving Plaintiff's claim of disability, before the ALJ.

Accordingly, on remand, the ALJ shall fully and properly consider all material aspects of the opinions and recommended limitations of Drs. Caldron and Newton, including those set forth herein, as well as the remaining disputed issues.

# IV.

## ORDER

Pursuant to sentence four of 42 U.S.C. § 405(g), IT THEREFORE IS ORDERED that Judgment be entered reversing the decision of the Commissioner of Social Security and remanding this matter for further administrative proceedings consistent with this Order.

Dated: August 17, 2018

_____
JOHN D. EARLY
United States Magistrate Judge